IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL L. BROOKS., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  2:21-cv-01228 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| ORLANDO L. HARPER, Warden of | ) | |
| Allegheny County Jail, LAURA K. | ) | ECF No. 8 |
| WILLIAMS, Chief Deputy Warden of | ) | |
| Healthcare Services, DAVID ZETWO, | ) | |
| Chief Deputy Warden, JASON | ) | |
| BEASOM, Deputy Warden, COUNTY | ) | |
| OF ALLEGHENY, SERGEANT | ) | |
| RAIBLE, OFFICER TUCKER and | ) | |
| TRINITY SERVICES GROUP | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION
## ON CORRECTION DEFENDANTS' MOTION TO DISMISS

For the reasons stated herein, it is respectfully recommended that the Motion to

Dismiss Plaintiff's Complaint, ECF No. 8, filed by Defendants Allegheny County;

Warden Harper; Deputy Wardens Williams, Zetwo and Beasom; Sergeant Raible and

Officer Tucker ("Corrections Defendants") be adjudicated as follows:  GRANTED with

prejudice as to claims against the named Individual Defendants in their official

capacities and GRANTED without prejudice and with leave to amend as to the

remainder of Plaintiff's claims against the moving Defendants.  Plaintiff's Amended

Complaint, if any, should set forth the specific allegations which he may make in good

1

faith and are sufficient to state a plausible claim for violation of his Constitutional rights under the applicable standards.

## I. Procedural and Factual History

Plaintiff Samuel L. Brooks ("Plaintiff"), at all relevant times then an inmate of the Allegheny County Jail ("ACJ"), commenced the present civil rights action, per 18 U.S.C. § 1983, by the filing of a Complaint through his legal counsel on September 10, 2021. ECF No. 1.  Defendants' Motion to Dismiss was filed at ECF No. 8 and has been fully briefed by the parties.  The Motion is now ripe for review.

Plaintiff attests that on the morning of September 15, 2019, he was eating oatmeal from his food tray in his Pod and bit into a bag containing a foreign substance which apparently was or included cocaine.  Corrections Officer Tucker, who was present, took the bag and its possession was later transferred to Sergeant Raible.  Brooks lost consciousness for 15-20 minutes and was ill/vomiting.  Defendant Beason was among those responding.  Plaintiff was removed by stretcher and awakened in the medical unit; but he received variously inadequate medical care and his request for hospital treatment was denied.

Owing to concern for his personal safety, Plaintiff refused to return to his assigned unit/cell and was consequently confined to a restricted housing unit ("RHU" ("the hole"). He was refused a shower for several days and on occasions thereafter. While in the RHU Plaintiff filed Inmate Complaint forms.  Defendant Zetwo removed Plaintiff from the RHU on September 18th.  Owing to concern for his personal safety,

Plaintiff refused his jail food trays because his request for a "safe and secure food tray" was denied.  He was given Ensure and purchased commissary food.

On September 17th, Plaintiff addressed an Inmate Request form to Defendant Williams, who replied two days later, confirming that he tested positive for cocaine metabolites following the incident of September 15th.[1]   As Plaintiff advised his lawyer in November, 2019, Plaintiff was subsequently subjected to unfair treatment and harassment, including the denial of medical treatment (for, *e.g.*, recurring stomach pain and headaches while declining food trays) or "safe and secure" food accommodations, withholding of his mail, disparaging remarks and rumors, false "write up" for being out of his cell, attempt(s) to draw Plaintiff into fights, disposal of personal property, denial of showers, denial of request to be returned to a shared cell with his Uncle, failure to record his food refusals, and non-responsiveness to his requests and grievances.  In a meeting with Defendant Warden Harper on November 13th, Harper advised Plaintiff he had not received his requests.

Plaintiff attests generally to the Corrections Defendants' failures to act or respond, and to unspecified Defendants' generalized wrongful conduct, regarding the various matters complained of as violations of his Eighth and Fourteenth Amendment rights.  The above summation reflects, however, Plaintiff's specific allegations as to the

---

[1] This communication, attached to the Complaint as ECF No. 1-2, also attests that Plaintiff was seen at that time by a physician who made treatment recommendations, and was seen subsequently "and removed from IC."

actions attributed to and asserted against the Corrections Defendants.  *See also* ECF No. 9 at 4.

Plaintiff brings a claim under 18 U.S.C. § 1983 against the Corrections Defendants for violations of his Eighth Amendment right to be free from "cruel and unusual punishment" and his Fourteenth Amendment rights regarding "conditions of confinement".  His claims are premised on Defendants' deliberate indifference to a serious medical condition, which would amount to a Constitutional violation, and on the conditions of confinement complained of, including the Defendants' alleged (a) creation/allowance of a dangerous condition caused by illegal substance distribution and (b) failures to provide a contraband free and "poison free" food environment, to investigate, or to adopt/correct policies or procedures.  Plaintiff's alleged consequential harms include malnourishment, headaches, PTSD, and pain and suffering.

The Court notes that the Complaint is, to a significant extent, broadly and vaguely worded, conclusory, and sometimes fails to clearly link allegations to either (a) the Defendant(s) plausibly responsible (*e.g.*, for acts/omissions within the scope of their employment/authority) and/or (b) the Constitutional violation they are intended to support.[2]  Plaintiff has requested leave to amend should the Court dismiss his claims as filed.

---

[2] In the interest of judicial efficiency, the Court notes these same Complaint deficiencies in the allegations and claim(s) made against Defendant Trinity Food Services, which has not yet filed a motion in this action.

## II.  STANDARD OF REVIEW

The United States Court of Appeals for the Third Circuit summarized the

standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of

Civil Procedure, a plaintiff must come forward with "a short and plain statement

of the claim showing that the pleader is entitled to relief." As explicated in

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim

for relief, and "[a] claim has facial plausibility when the pleaded factual content

allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." Although "[f]actual allegations must be enough to raise

a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a

reasonable expectation that discovery will reveal evidence of the necessary

element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also*

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18 (3d Cir.

2013); *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).[3]

As Plaintiff correctly observes, when dismissing a claim pursuant to Fed. R. Civ.

P. 12(b)(6) in a civil rights case, the Court must permit a curative amendment

---

[3] The Court notes that Plaintiff is represented by legal counsel whose work product is unentitled to the liberal constructions afforded *pro se* pleadings in a § 1983 action. *Cf. e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

unless it would be inequitable or futile.  *Phillips v. County of Allegheny*, 515 F.3d

224, 245 (3d Cir. 2008).

### III. ANALYSIS

#### A.  § 1983 Requirement of "Person Acting Under Color of State Law"

Pursuant to 42 U.S.C. § 1983, private citizens are afforded a means to redress

violations of federal law committed by state actors.  In pertinent part, § 1983 provides as

follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. ...

*Id*.  Section 1983 is not a source of substantive rights, but merely a method for

vindicating violations of federal law.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002);

*Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a Section 1983 claim, a

plaintiff must show a deprivation of a "right secured by the Constitution and the laws

of the United States . . . by a person acting under color of state law."  *Id*. (*quoting Mark v.

Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).  The pending Motion to Dismiss

does not dispute that the Corrections Defendants were acting under color of law with

regard to the matters alleged.

## B.  Dismissal of Official Capacity Claims Against Individual Defendants

As a threshold matter, Plaintiffs' claims against the Individual Defendants in their

official, as opposed to individual, capacities cannot be maintained and should be

dismissed with prejudice.

As noted above, actions against a government official in his or her individual or

personal capacity seek to impose liability on the government official for actions taken

under color of state law; official capacity actions represent another way to sue the

municipality of which the officer is an agent. *See, e.g., Gregory v. Chehi*, 843 F.2d 111, 120

(3d Cir. 1988) (personal capacity damage suits under section 1983 seek to recover

money from a government official, as an individual, for acts performed under color of

state law, whereas official capacity suits are duplicative of the claims against the

municipality and "generally represent only another way of pleading an action against

an entity of which an officer is an agent"); *Brice v. City of York*, 528 F.Supp.2d 504, 516 n.

19 (M.D. Pa. 2007) (official capacity claims against employees merge as a matter of law

with those against the municipality that employs them). *See also Lenhart v. Pennsylvania*,

No. CIV.A. 11-312, 2012 WL 761211, at *6 (W.D. Pa. Jan. 12, 2012), report and

recommendation adopted as modified, No. CIV.A. 11-312, 2012 WL 761177 (W.D. Pa.

Mar. 7, 2012); *Rulli v. City of Pittsburgh*, No. 2:20-CV-965, 2021 WL 1391761, at *5 (W.D.

Pa. Mar. 23, 2021), *report and recommendation adopted in part*, No. CV 20-965, 2021 WL

1390492 (W.D. Pa. Apr. 13, 2021) (claims in municipal employee's official capacity are

duplicative and must be dismissed.)

**C.  Underline{General Failure to Allege Plausible Personal or Supervisory Liability;**

**Specific Failure to Allege a 14th Amendment Conditions of Confinement Claim**

In general, personal liability may be found under § 1983 on the basis of a defendant's "personal involvement" in the deprivation of a Constitutional right. *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011).  That is, when a defendant plays an "affirmative part" in the alleged Constitutional violation. *Iqbal*, 556 U.S. 677. *Estate of Smith v Marasco*, 430 F.3d 140, 151 (3rd Cir. 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Supervisory liability may be found where a defendant in a position of authority personally participated or personally directed others in the violation of a plaintiff's rights, or knew of and acquiesced in a subordinate's unconstitutional conduct.

Supervisory liability may also attach where a defendant, with deliberate indifference to the consequences, established and maintained a policy or procedure that directly caused constitutional harm. *Dinote v. Danberg*, 601 F.Appx. 127 (3d Cir. 2015). In this context, a plaintiff must prove that the policy or procedure created an unreasonable risk of a constitutional violation; the defendant was aware of and subjectively indifferent to that unreasonable risk; and the Constitutional injury was caused by the failure to implement an appropriate policy or procedure. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001). [4]

---

[4]  In other words, to establish personal liability against a defendant in a Section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under section 1983

As Defendants properly acknowledge, inmates have a constitutional right to humane conditions. ECF No. 9 at 10-11 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A Constitutional violation occurs, however, only where the deprivation alleged is objectively sufficiently serious and the defendant official has acted with "deliberate indifference" to inmate health or safety. *Id* 511 U.S. 825, 825–26.  Deliberate indifference is more than negligence, and is in essence acting recklessly.  Moreover, to give rise to a Constitutional violation, a defendant must have been subjectively aware of the risk and disregarded it. *Id.* at 511 U.S. 825, 825–26, 114 S. Ct. at 1980–83.  To sustain a claim, the allegations must be more than conclusory.

As reflected in the Factual History, and fairly recounted in Defendants' Brief in Support of Motion to Dismiss, ECF No. 9, Plaintiff's Complaint makes sometimes broad

---

only if the defendant played an "affirmative part" in the alleged misconduct.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).  Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207.  *See also Keenan v. Philadelphia*, 983 F.2d 459, 466 (3d Cir. 1992); *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervisory official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervisory official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach.  *Colburn v. Upper Darby Township*, 838 F.2d 663, 673 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989) (Colburn I).  However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id*. (quoting *Chinchello*, 805 F.2d at 133).  *See also Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997).

and conclusory allegations and fails to allege facts sufficient to ground plausible

liability for a Constitutional violation on the part of any Corrections Defendant.

D. **Specific Failure to Allege Plausible Deliberate Indifference to Serious Medical Need in Violation of the 8th Amendment**

In addition to the overarching pleading inadequacies constituting grounds for

dismissal without prejudice, the Complaint also appears to misunderstand the

requirements of its asserted Eighth Amendment claim based on his serious medical

need.  In the interest of judicial efficiency, should Plaintiff be granted leave to amend

and elect to do so, the legal parameters of such a claim are as follows:

The Supreme Court has admonished that "[n]ot every governmental action affecting

the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. . . ."

*Whitney v. Albers*, 475 U.S. 312, 319 (1986).  "'After incarceration, only the unnecessary

and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden

by the Eighth Amendment.'" *Id.* (quoting *Ingraham*, 430 U.S. at 670) (ellipsis in original).

The Eighth Amendment's protections include a prohibition against exhibiting deliberate

indifference to serious medical needs of inmates. *Estelle v. Gamble*, 429 U.S. 97, 104

(1976).  To set forth a cognizable claim for deliberate indifference to a serious medical

need, a plaintiff must allege (1) a serious medical need and (2) acts or omissions by

prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v.

Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A "prisoner has no right to choose a specific form of medical treatment," so long

as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir.

2000).[5] Allegations of medical malpractice are also insufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional violation).[6]

With respect to the first requirement, a medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)). A medical need may be similarly "serious" if "unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care," or if "denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *Lanzaro*, 834 F.2d at 347 (citations omitted).

With respect to the second requirement set forth by the Supreme Court in *Estelle*, 429 U.S. at 104, a prison official acts with "deliberate indifference" "if he knows that

---

[5] An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but has a difference of opinion, such as believing, e.g., that more should be done by way of diagnosis and treatment and maintaining that options available to medical personnel were not pursued on his behalf. *Estelle*, 429 U.S. at 107

[6] "When making a determination as to deliberate indifference, the court must focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be). " *Blackstone v. Thompson*, 568 Fed.Appx. 82, 84 (3d Cir. 2014).

[an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  Deliberate indifference is a subjective standard and one fundamentally different than medical negligence.  It requires obduracy and wantonness that constitutes recklessness or a conscious disregard of a serious risk. *Rouse*, 182 F.3d at 197.  Deliberate indifference to a prisoner-plaintiff's serious medical needs consists of "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Pearson*, 850 F.3d at 534. That denial or delay must be motivated by "non-medical factors".  *Id.* at 537.

Accordingly, courts have found deliberate indifference under the following combined circumstances: (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Id.* at 538, *Lanzaro*, 834 F.2d at 347; *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

Prison administrators cannot be found deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being [medically] treated . . . ."  *Durmer*, 991 F.2d at 69.  Rather, a non-medical prisoner official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a

prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirements of deliberate indifference." *Id.*

Under the applicable standards, Plaintiff has not alleged specific factual personal acts or omissions committed by a Defendant sufficient to maintain a plausible claim of deliberate indifference to a serious medical need; nor has he alleged specific facts sufficient to a claim that a supervisory/administrative Defendant knew or had reason to know that Plaintiff's serious medical need was being treated with deliberate indifference or otherwise disregarded in violation of his Constitutional protections.

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Correction Defendants' Motion to Dismiss, ECF No. 8, be adjudicated as follows: GRANTED with prejudice as to claims against the Individual Defendants in their official capacities and GRANTED without prejudice and with leave to amend as to the remainder of Plaintiff's claims against the moving Defendants.  Plaintiff's Amended Complaint, if any, should set forth the specific allegations which (a) he may make in good faith under the Federal Rules of Civil Procedure and (b) are sufficient to state a plausible claim for violation of his Constitutional rights under the applicable standards.

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days

from the date of service of objections to respond thereto.  Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:  May 12, 2022                                        BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

cc:      All Counsel
         *Via Electronic Mail*