

RECEIVED
AUG 13 2018
JUDGE McDANIEL

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | CRIMINAL DIVISION |
| VS. | CC 201708906 |
| TODD ROBINSON<br>A.K.A. TODD GLOVER | COMMONWEALTH'S RESPONSE TO DEFENSE MOTION |

Judge Donna Jo McDaniel

Filed on Behalf of the
Commonwealth of Pennsylvania

Counsel of Record for the
Commonwealth of Pennsylvania

STEPHEN A. ZAPPALA, JR.
DISTRICT ATTORNEY

By

William A. Petulla
Assistant District Attorney
Pa. I.D. No. 88626

Office of the District Attorney
of Allegheny County
401 Courthouse
Pittsburgh, Pennsylvania 15219

(412) 350-4407

Respondents' Exhibit 10

<u>COMMONWEALTH RESPONSE TO DEFENSE MOTION</u>

TO THE HONORABLE, THE JUDGES OF SAID COURT:

      AND NOW, comes the Commonwealth of Pennsylvania by its attorneys, STEPHEN A. ZAPPALA, JR., District Attorney of Allegheny County, and WILLIAM A. PETULLA, Assistant District Attorney, and respectfully represents the following:

1. Trial of the above-captioned case is scheduled to proceed on August 20, 2018, before the Honorable Donna Jo McDaniel.

2. The above-listed Defendant is charged with two (2) counts of 18 Pa C.S.A. § 2702, Aggravated Assault; two (2) counts of 18 Pa. C.S.A. § 2705, Recklessly Endangering Another Person; and one (1) count of the following: 18 Pa. C.S.A. § 6105, Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms; 75 Pa. C.S.A. § 3733, Fleeing or Attempting to Elude Police Officer; 18 Pa. C.S.A. § 3304, Criminal Mischief; 18 Pa. C.S.A. § 6106, Carrying a Firearm Without a License; 75 Pa. C.S.A. § 3743, Accidents Involving Damage to Intended Vehicle or Property; and 75 Pa. C.S.A. § 3736, Reckless Driving.

3. On May 7, 2018, the Defense filed an Onmibus Pre-Trial Motion contending various abuses by Wilkinsburg Police and, *inter alia*, deficiencies in the preliminary hearing presented by the Commonwealth.

4. On August 6, 2018, counsel for the Defense and the Commonwealth discussed various items sought to litigate via motion. While the Commonwealth conceded to certain points, *see infra*, the Commonwealth believes that other matters necessitate a greater detailed argument. As such, the ensuing motion follows.

Respondents' Exhibit 10

## PETITION FOR WRIT OF HABEAS CORPUS

1. On August 3, 2018, the Commonwealth filed a "Motion to Amend Criminal Information" in response to the Defense's Petition for Writ of Habeas Corpus. The Commonwealth conceded that the Aggravated Assault, Serious Bodily Injury 18 Pa. C.S.A. § 2702(a)(2), charges at Counts 1 & 2 should be amended and replaced by Aggravated Assault, Attempts by Physical Menace, 18 Pa. C.S.A. § 2702(a)(6).

2. The amendment lowers and modifies the grading of Counts 1 & 2 to a Felony 2.

## II. MOTION TO DISMISS

1. In its motion, the Defense avers, "the testimonial evidence presented at the preliminary hearing is in direct conflict with photographic, video and scientific evidence that the Commonwealth has in its possession and has turned over to the Defense." (Defense Omnibus Pre-Trial Motion, Page 4 averment No. 2).

2. Further, the Defense, without any reference to a ballistics expert report, alleges the "possible paths" of the bullets fired by Sergeant Matthew Morrison and Officer Christopher Duncan stand in stark contrast to Morrison's testimony.

3. The Commonwealth would argue that if such ballistic evidence exists, which would contradict the testimony by Sergeant Morrison at the preliminary hearing, the Defense has not provided the Commonwealth with said expert report.

4. Moreover, the blanket notion that a "possible path" of bullets, without any demonstrable evidence, is far too tenuous to discredit the sequence of events[1] that Sergeant Morrison

---

[1] Sargent Morrison stated, "As he [Todd Robinson, a.k.a. Todd Glover] came back the second time and engaged the vehicle, that we I fired a single round, and Officer Duncan fire at least two rounds at the subject."

Respondents' Exhibit 10

chronicled at the preliminary hearing on July 20, 2017.

### III. MOTION TO SUPPRESS EVIDENCE

1. The Defense filed and scrutinized Morrison and Duncan's actions in the Wilkinsburg Parking lot as unlawful based on the theory that the officers acted as a catalyst to the ensuing chase and ultimate crash.

2. As such, the Defense argued in motion that the officers created a "dangerous situation," (Defense Omnibus Pre-Trial Motion, Page 6, averment Nos. 6 & 11) and thus, the subsequent search of the vehicle that recovered a firearm should be suppressed.

3. The Defense orally modified this claim for suppression to include the initial contact Sergeant Morrison and Officer Duncan had with the Defendant on Taylor Way in Wilkinsburg. The Defense surmises that this interaction amounted to an unlawful investigative detention.

4. The Commonwealth responds as follows. The Commonwealth seeks to respond to the question of whether an officer, who approaches an occupant sleeping in a car in the alleyway of a business, and asks to see their identification, has conducted an "investigative detention" rather than had a "mere encounter" with the occupant?

5. Recently, the Pennsylvania Supreme Court reaffirmed that the Pennsylvania courts must utilize the Jones/Mendenhall standard "in determining whether the conduct of the police amounts to a seizure or whether there is simply a mere encounter between a citizen and police officer." *Commonwealth v. Parker*, 161 A.3d 357, 362 (Pa. 2017), *quoting Commonwealth v. Matos*, 672 A.2d 769, 774 (Pa. 1996). The United States Supreme Court created the *"Mendenhall" Test*; an objective test, not based on whether the citizen perceived if his or her movement was being restrained, but if the "officer's words and

Respondents' Exhibit 10

actions could have conveyed that to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

6. Following the Court's objective approach, the Pennsylvania Supreme Court evaluates the totality of the circumstances surrounding an encounter and determines whether a reasonable person would have believed that they were being restrained or stopped for an investigatory purpose. *Commonwealth v. Jones*, 378 A.2d 835, 840 (Pa. 1977). The court in *Jones* explained that a "stop" is not determined based on the absence or presence of any force by an officer, but rather on the amount of force they exercised. *Id.*, at 839. Difficulties in analyzing if a "stop" occurred arise when an officer does not verbalize there is a restriction on the citizen's movement, no restraint is involved, and the citizen does not attempt to walk away. *Id.* A uniformed officer approaching a citizen and questioning them is insufficient to conclude that a "stop" occurred; additional factors, as subtle "as the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements" are analyzed to determine if a reasonable person would have felt restrained. *Id.*, at 839-40.

7. In the Pennsylvania Supreme Court case *Commonwealth v. Au*, an officer on routine patrol during the early hours of the morning saw an automobile parked in a business parking lot. 42 A.3d 1002 (Pa. 2012). According to the officer, it was unusual to see a car parked in that location during these hours, so he decided to approach the vehicle. Although the officer did not activate his emergency lights, he positioned his patrol car at an angle to illuminate the passenger side. This positioning did not block the parked car from being able to leave, but allowed the lights of his car to help visualize the dark

Respondents' Exhibit 10

landscape.

8. When he approached the passenger side of the vehicle, an occupant rolled down the window. Since the passengers appeared young, the officer asked if everyone was 18, and the backseat passengers responded "no". The officer than asked the front seat passenger for his identification and when the passenger opened the glove box in front of him, two baggies of marijuana were visible. The officer requested that another officer come to the location due to the illegal drugs and he went to the driver's side of the vehicle and asked the driver for his identification. Defense counsel in the case sought to suppress the marijuana, stating that officer's conduct constituted an illegal investigative detention.

9. The Pennsylvania Supreme Court held that based on the decision of the United States Supreme Court, "a request for identification is not to be regarded as escalatory in terms of the coercive aspects of a police-citizen encounter." *Id.*, at 1007. Further, the court in *Au* reasoned that since the officer did not "activate the emergency lights on his vehicle, position his vehicle so as to block the car that Appellee was seated in from exiting the parking lot, brandish his weapon, make an intimidating movement or overwhelming show of force, make a threat or a command, or speak in an authoritative tone," his actions were to be considered as "acceptable, non-escalatory factors." *Id.*, at 1008. Thus, the officer's actions of approaching the parked vehicle at night and requesting identification of the occupants are to be considered a mere encounter rather than an investigative detention.

10. The Court in *Parker* distinguished the holding in *Au* based on a "simple reason: [that] the investigating officers . . . did not suggest that the defendants were suspected of criminal wrongdoing, and therefore the encounter in this case did not transform into an

Respondents' Exhibit 10

investigatory detention. 161 A.3d at 365. The Court decided that an investigatory detention occurred because two officers confronted the defendant while he was walking along the street at night. The officers suspected the defendant to be engaged in criminal activity, despite the defendant's actions not giving the officers a reasonable suspicion to stop the appellant. Further, since there was a lack of criminal activity, the one officer invented the pretext of criminal activity to stop the defendant. *Id.*, at 364.

11. Additionally, the Pennsylvania Supreme Court emphasized the Superior Court's non-exclusive list of facts which can lead to a finding of an investigatory detention. Quoting the court in *Commonwealth v. Collins*, 950 A.2d 1041, 1047 (Pa. Super. 2008), factors include:

> the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Id.*, at 363. However, one combination of factors, as a matter of law, results in an investigatory detention. When several officers have a threatening presence and there is an indication that defendant is suspected of criminal activity, the conclusion must be that a reasonable person would believe that he or she is not free to leave. *Id.*

12. In the present case, the officer was issuing citations for vehicles. When the officer came upon the Defendant sleeping in a parked vehicle, the officer backed up his vehicle and awaited the arrival of a second officer. Once awakening the Defendant with the second officer, the officers asked the Defendant to produce his identification. Analogous to the facts of *Au*, the officer did not have any suspicion of criminal activity and acted without

Respondents' Exhibit 10

engaging in any escalating factors.

13. The officer did not block the Defendant's path or obstruct his ability to exit, demand the Defendant to exit or remain in the car, nor activate the emergency lights of his vehicle. As the *Jones Test* focuses on the context of the questions asked to a Defendant, in the present situation, the officers merely asked why the Defendant was sleeping in the alleyway in front of an auto business and for his identification. Additionally, akin to *Au*, holding that officers interacting with occupants parked at a business overnight do not rise to the level of an investigative detention, officers interacting with a parked car in an alleyway must not lead to an investigative detention. 42 A.3d 1002.

14. Considering the circumstances, a parked car in a dark alleyway can be considerably more suspect than an open parking lot, which the public would want the police to have a "mere encounter" with.

15. Further, the court in *Au* recognized the Commonwealth's social policy considerations to reinforce the conclusion that approaching a parked car at night is solely a "mere encounter," absent any enumerated escalating factors. 42 A.3d at 1006. One of the considerations the Commonwealth highlighted in their argument was that police officers, who work late at night, are at an increased risk of danger when approaching a vehicle with unknown occupants inside when the business is closed. *Id.* Thus, an officer asking for the identification of an occupant is not to be considered an escalating factor.

16. It can be further argued from a social policy perspective that it would be reckless for an officer to neglect an encounter with the occupant parked in an alleyway. Surely the public would not want officers to avoid checking occupants, and as a result of the failed encounter, withholding rendering aid to the occupant that may have suffered a medical

Respondents' Exhibit 10

event, impairing their ability to care for themselves. Additionally, with the increased rate of overdoses in America, officers carrying Narcan would be impeded from providing this lifesaving antidote if while on regular patrols, they could not approach a parked car in a public area.

17. Thus, utilizing the factors enumerated by the court in *Collins*, as a matter of law, the officers' initial encounter with the defendant fail to include a threatening presence, coupled with a suspicion of criminal activity, which would constitute an investigative detention. 950 A.2d at 1047.

## IV. MOTION FOR SEVERANCE

1. The Commonwealth has no objection to the Motion for Severance.

## V. MOTION IN LIMINE

1. On August 9, 2018, the Commonwealth filed a Notification of Commonwealth's Intention to Present Evidence of Other Crimes, Wrongs, or Acts Pursuant to Rule 404(B)(2) and Rule 404(B)(4) of the Pennsylvania Rules of Evidence.

Respectfully submitted,

STEPHEN A. ZAPPALA, JR.
DISTRICT ATTORNEY

By: _____
William A. Petulla
Assistant District Attorney

063

Respondents' Exhibit 10

CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

_____
William A. Petulla
Assistant District Attorney

8/13/18
Date

Respondents' Exhibit 10

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13 day of AUGUST, 2018, I have caused to be served upon the persons listed below a true and correct copy of the within notification.

Service by first class mail or hand delivery addressed as follows:

Patrick Sweeney, Esq.
*Via Electronic Transmission*

The Honorable Donna Jo McDaniel
Allegheny County Courthouse
Third Floor
Pittsburgh, PA 15219

_____
William A. Petulla
Assistant District Attorney

Respondents' Exhibit 10